JUDITH RUTLEDGE *v.* STATE OF CONNECTICUT, DEPARTMENT OF PUBLIC SAFETY
(AC 19789)

Spear, Mihalakos and Freedman, Js.

Argued October 23, 2000—officially released May 15, 2001

*John W. Greiner*, for the appellant (plaintiff).

*Lisa Guttenberg Weiss*, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellee (defendant).

*Opinion*

SPEAR, J. In this appeal from the decision of the workers' compensation review board (board), we are called upon to determine the proper formula for computing certain cost of living adjustments (COLAs) to the plaintiff's weekly workers' compensation rate. The compensable injury in this case occurred on July 14, 1983. At that time, annual COLAs to total disability and dependent survivors' benefits were awarded in an amount equal to the annual dollar increase in the maximum weekly compensation rate (flat dollar adjustment method). On October 1, 1991, an amendment to General

Statutes (Rev. to 1991) § 31-307a (a)[1] became effective and required that COLAs to total disability benefits be based on a percentage of the increase in the maximum weekly compensation rate (percentage adjustment method). In 1992, General Statutes (Rev. to 1991) § 31-306 (a) (2) (A)[2] was amended to require that the percentage adjustment method also be used in calculating COLAs to survivors' benefits.

[1] General Statutes (Rev. to 1991) § 31-307a (a), as amended by Public Acts 1991, No. 91-339, § 27, provides in relevant part: "The weekly compensation rate of each employee entitled to receive compensation under section 31-307 as a result of an injury sustained on or after October 1, 1969, which totally disables the employee continuously or intermittently for any period extending to the following October first or thereafter, shall be adjusted annually as provided in this subsection as of the following October first, and each subsequent October first, to provide the injured employee with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of the injury under section 31-309. If the maximum weekly compensation rate as determined under the provisions of section 31-309, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing as of the date of the injury, the weekly compensation rate which the injured employee was entitled to receive at the date of the injury shall be increased *by the percentage of the increase in the maximum weekly compensation rate required by the provisions of section 31-309 from the date of the injury to such October first.* . . ." (Emphasis added.)

[2] General Statutes (Rev. to 1991) § 31-306 (a) (2) (A), as amended by Public Acts 1992, No. 92-31, § 4, provides in relevant part: "The weekly compensation rate of each dependent entitled to receive compensation under this section as a result of death arising from a compensable injury occurring on or after October 1, 1977, shall be adjusted annually as provided in this subdivision as of the following October first, and each subsequent October first, to provide the dependent with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of the injury under section 31-309, as amended by section 29 of Public Act 91-339. If the maximum weekly compensation rate, as determined under the provisions of section 31-309, as amended by section 29 of Public Act 91-339, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing at the date of the injury, the weekly compensation rate which the injured employee was entitled to receive at the date of the injury shall be increased *by the percentage of the increase in the maximum weekly compensation rate required by the provisions of section 31-309, as amended by section 29 of Public Act 91-339, from the date of the injury to such October first.* . . ." (Emphasis added.)

The plaintiff asserts that the board improperly affirmed the workers' compensation commissioner's calculation of her COLAs because (1) the commissioner used a COLA formula that applies to benefits for total incapacity pursuant to § 31-307a (a) but does not apply to the surviving dependent benefits that the plaintiff receives pursuant to § 31-306 (a) (2) (A) and, (2) even if the formula applies, the plain language of the relevant statutes requires that the plaintiff's COLAs be calculated so that she receives the maximum compensation rate for the years at issue.[3] We disagree and affirm the decision of the board.

The plaintiff, Judith Rutledge, is the widow of Michael Rutledge, who was injured in 1983. He received total disability benefits equivalent to the maximum weekly compensation rate up to the time of his death in 1995. As a dependent widow, the plaintiff was entitled to receive the same weekly benefits after her husband's death. In 1998, the commissioner ruled that COLAs to survivors' benefits for the period from October 1, 1995, to July 1, 1998, should be computed using a formula that resulted in the plaintiff's receiving less than the maximum weekly compensation rate for that time period. The board affirmed the commissioner's decision, determining that this result was dictated by the holding of our Supreme Court in *Gil* v. *Courthouse One*, 239 Conn. 676, 687 A.2d 146 (1997). In *Gil*, the court set forth the proper formula for computing COLAs to total disability benefits for 1991 and thereafter in cases where the worker's injuries occurred prior to the 1991 amendment.

Before addressing the plaintiff's specific assertions, it is helpful to examine the history of the various

---

[3] The plaintiff seeks the maximum weekly compensation rate of $584, $589 and $605 for the years 1995, 1996 and 1997, respectively. During those years, the plaintiff's weekly compensation rate was $550.46, $553.86 and $564.75.

approaches to interpreting the amended COLA statute.[4] We focus on the directives of two workers' compensation commission chairmen and two decisions of the board.

Shortly after § 31-307a (a) was amended, the then chairman of the commission, John Arcudi, issued a directive implementing the change from the flat dollar adjustment method to the percentage adjustment method. The Arcudi method calculated the COLA by multiplying the claimant's current compensation rate by the percentage of increase in the maximum weekly compensation rate over the previous year's maximum rate. That amount was then added to the claimant's previous year's rate to yield the new weekly rate.

Under the Arcudi method, claimants receiving the maximum weekly compensation rate continued to receive the maximum rate. To illustrate, if a claimant's current rate was the maximum rate of $200, and the percentage increase in the maximum rate was 10 percent, the COLA would be $20 and the new weekly rate would be equal to the new maximum rate of $220. Claimants receiving less than the maximum rate also would receive a 10 percent upward adjustment from their current weekly rates, but in an amount less than the maximum increase of $20. For example, a claimant with a current rate of $150 would receive a COLA of $15, resulting in a new weekly rate of $165.

The Arcudi method was used from October, 1991, to June 5, 1995, when the board decided *Wolfe* v. *JAB Enterprises, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 127 (1995). In *Wolfe*, the board determined that the Arcudi method was improper because it awarded COLAs that were based, in part, on prior COLAs. In the board's view, applying the percentage adjustment to the claimant's base rate, as augmented by prior COLAs,

---

[4] See *Gil* v. *Courthouse One*, supra, 239 Conn. 679-81.

violated the statute. The board ruled that the plain language of § 31-307a (a) mandated that COLAs be computed solely on the weekly compensation rate that the claimant was entitled to receive on the date of the injury (base compensation rate). The board thus determined that the percentage increase should be derived from the difference between the current maximum weekly rate and the maximum rate at the time of the injury. Under the Arcudi method, the percentage increase was derived from the difference between the current maximum rate and the maximum rate for the previous year.

Under the formula espoused in *Wolfe*, claimants receiving the maximum base compensation rate continued to receive the maximum weekly compensation rate, while claimants with a base compensation rate less than the maximum rate received considerably lower COLAs than before. We return to the examples previously described. Assume that the claimant who currently receives the maximum weekly rate of $200 received the maximum compensation rate of $100 at the time of the injury. A $20 increase in the maximum rate would constitute a 120 percent increase over the claimant's base compensation rate. Multiplying 120 percent by the base rate of $100 yields an increase of $120 over the base rate and a new weekly rate of $220. Assume, however, that the claimant who currently receives $150 was injured in the same year as the previous claimant but had a base compensation rate of $50. The $100 difference in the base and current rates represents accrued COLAs. If the percentage increase in the maximum weekly compensation rate were 120 percent, the COLA would be calculated by multiplying $50, the base compensation rate, by 120 percent. This would yield a COLA of $60 and a new weekly rate of $110, which is less than the previous rate of $165 calculated under the Arcudi method. That compression of benefits dictated by the *Wolfe* formula set the stage for the claimant's

challenge in *Gil* v. *Courthouse One,* supra, 239 Conn. 676.

In *Gil,* the second injury fund (fund), relying on the *Wolfe* formula, reduced the injured employee's biweekly compensation rate from $518.21 to $316.04. Id., 693 n.19. The commissioner ordered the reinstatement of Gil's flat dollar COLAs from the date of injury in December, 1983, through September 30, 1991. Id., 681. For October 1, 1991, and thereafter, the commissioner ordered that COLAs be calculated using the percentage adjustment method. Id. The fund appealed to the board. Id. Reversing *Wolfe,* the board ordered that COLAs to Gil's benefits be calculated using the flat dollar method. Id. Reasoning that the amendment to § 31-307a (a) was substantive in nature and could not be applied retroactively, the board concluded that, for compensable injuries that predated the 1991 amendment, the flat dollar adjustment method in effect at the time of the injury must govern. Id. Our Supreme Court heard the fund's appeal from the decision of the board.

Faced with § 27 of Public Acts 1991, No. 91-339 (P.A. 91-339),[5] which, on a literal reading, requires the application of the *Wolfe* formula with its disregard of previous COLAs and resulting decreases in benefits for those not receiving the maximum base compensation rate, and § 50[6] of P.A. 91-339, which precludes any reduction in benefits for injuries that occurred before October 1, 1991, our Supreme Court devised a formula that gives effect to both sections. Accrued flat dollar COLAs are retained by calculating the percentage increase based on the difference between the current maximum rate

---

[5] Section 27 altered the method of calculating COLAs by replacing the previous flat dollar adjustment method with the percentage adjustment method. See footnote 1.

[6] Section 50 of P.A. 91-339 provides in relevant part that "[n]othing in this act shall be construed to reduce the amount of any compensation awarded for any injury that occurred before October 1, 1991."

and the maximum rate effective on October 1, 1990 (the last maximum rate subject to a flat dollar increase). The percentage increase thus derived is then multiplied by the claimant's base rate to yield the COLA. That sum is then added to the claimant's base rate and the accrued COLAs through October 1, 1990, to yield the new current rate.[7] Using that formula, the claimant's accrued COLAs are neither lost (the *Wolfe* method) nor compounded (the Arcudi method), but preserved as required by § 50 of P.A. 91-339. At the same time, § 27 is complied with by applying the percentage adjustment method to the claimant's base compensation rate.

Returning once again to our examples, under *Gil*, the claimant receiving the maximum rate would receive a COLA below the maximum weekly compensation rate, but the claimant receiving less than the maximum rate would now receive a COLA more closely approximating that received under the Arcudi method. The COLA for the claimant with a weekly rate of $200 would be calculated by applying the 10 percent increase in the maximum rate to the base compensation rate of $100, yielding a COLA of $10. Adding that sum to the current rate of $200 would result in a new weekly rate of $210. The COLA of the other claimant would be calculated by applying the 10 percent increase to the base compensation rate of $50, which would yield a COLA of $5 and a new weekly rate of $155.

After the *Gil* decision, the then board chairman, Jesse M. Frankl, issued a directive that COLAs to benefits

---

[7] Under *Gil*, COLAs for claimants injured prior to October 1, 1991, were to be calculated according to the following formula: "the percentage of increase of the maximum compensation rate is to be obtained by dividing the current maximum compensation rate by the maximum compensation rate effective on October 1, 1990; that figure should then be multiplied by the claimant's base compensation rate and then *added to the claimant's COLA as of October 1, 1990.*" (Emphasis added.) *Gil* v. *Courthouse One*, supra, 239 Conn. 695.

arising from injuries that occurred prior to October 1, 1991, be calculated using the formula approved by our Supreme Court in *Gil*. The plaintiff claimed that her COLAs should not be calculated using the method set forth in *Gil* and requested a hearing before the commissioner. She argued that a beneficiary originally entitled to the maximum base compensation rate always should be paid at the maximum rate. The commissioner reviewed the evidence, found that the percentage adjustment method adopted by the *Gil* court had been correctly applied and confirmed the award of benefits under that standard. Thereafter, the plaintiff petitioned the board for a review of the commissioner's findings and award, but the board upheld the commissioner's decision. This appeal followed. The legislature subsequently enacted Public Acts 1998, No. 98-104, § 2 (P.A. 98-104),[8] which further revised § 31-306 (a) (2) (A) and, in effect, restored COLAs after July 1, 1998, to a level approximating the statutory maximum.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Neither the review board nor this court has the power to retry facts. . . . It is well estab-

---

[8] General Statutes (Rev. to 1997) § 31-306 (a) (2) (A), as amended by P.A. 98-104, § 2, provides in relevant part: "If the maximum weekly compensation rate, as determined under the provisions of said section 31-309, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing at the date of the injury, the weekly compensation rate which the injured employee was entitled to receive at the date of the injury or October 1, 1990, whichever is later, *shall be increased by the percentage of the increase in the maximum weekly compensation rate required by the provisions of said section 31-309 from the date of the injury or October 1, 1990, whichever is later, to such October first. . . .*" (Emphasis added.)

lished that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks omitted.) *Schiano* v. *Bliss Exterminating Co.*, 57 Conn. App. 406, 411, 750 A.2d 1098 (2000).

I

The plaintiff first asserts that the *Gil* formula should apply only to claims for total disability benefits under § 31-307a (a). She points out that the majority in *Gil* made no reference to the computation of benefits for surviving dependents under § 31-306 (a) (2) (A), that the plaintiff in *Gil* was totally disabled and that the *Gil* court focused its entire analysis on the 1991 amendment to § 31-307a, specifically, §§ 27 and 50 of P.A. 91-339, and the board's interpretation of the 1991 amendment in *Wolfe* v. *JAB Enterprises, Inc.*, supra, 14 Conn. Workers' Comp. Rev. Op. 127. She, therefore, claims that the formula set forth in *Gil* does not apply to survivors' benefits under § 31-306 (a) (2) (A). We disagree.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relation-

ship to existing legislation and common law principles governing the same general subject matter. . . . It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated.

\* \* \*

"Moreover, [i]n construing [an] act . . . this court makes every part operative and harmonious with every other part insofar as is possible. . . . In addition, the statute must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . Therefore, the meaning of [terms], where practical, should be applied consistently throughout the act." (Citations omitted; internal quotation marks omitted.) *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 133–37, 717 A.2d 747 (1998). "When two constructions are possible, courts [should] adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results." (Internal quotation marks omitted.) *Grigerik* v. *Sharpe*, 247 Conn. 293, 307–308, 721 A.2d 526 (1998).

The interpretation of a statute presents a question of law that is subject to plenary review. We consider the board's construction of a worker's compensation statute, but we give that construction no special deference unless an appellate court has reviewed the board's interpretation of the statute. *Luce* v. *United Technologies Corp.*, supra, 247 Conn. 137–38; see also *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995).

Although the plaintiff's claim invites this court to construe, as a matter of first impression, § 31-306 (a) (2) (A) of the Workers' Compensation Act, General Statutes § 31-275 et seq., as applied to the calculation of survivors' benefits from October 1, 1995, through June 30, 1998, a similar COLA issue was before the board and the

Supreme Court in *Gil*. We, therefore, find our Supreme Court's construction of § 31-307a (a) in *Gil* to be compelling because the relevant language in §§ 31-306 (a) (2) (A) and 31-307a (a) was almost identical during that period.

Under our plenary power to review the board's ruling, we conclude that the commissioner properly calculated COLAs to the plaintiff's survivors' benefits using the formula set forth in *Gil*. The relevant language of P.A. 91-339, § 27, amending § 31-307a (a), and Public Acts 1992, No. 92-31, § 4 (P.A. 92-31), amending § 31-306 (a) (2) (A), was the same. Both amendments mandated that if the maximum weekly compensation rate in years following the date of the injury was greater than the maximum weekly compensation rate prevailing at the date of the injury, the weekly compensation rate that the employee or dependent was entitled to receive on the date of the injury should be increased annually "by the percentage of the increase in the maximum weekly compensation rate . . . ." Moreover, the two amendments were enacted only one year apart, and both amendments were intended to replace the flat dollar adjustment method for calculating COLAs.

Furthermore, there is nothing in the legislative history of P.A. 92-31 to suggest that it should be construed any differently from § 27 of P.A. 91-339. There was little or no discussion of the amendment in the hearing conducted by the joint committee on labor and public employees or during debate on the Senate floor. See Conn. Joint Committee on Labor and Public Employees, Pt. 1, 1992 Sess., p. 140; see also 36 S. Proc., Pt. 4, 1992 Sess., pp. 1262–64. On the floor of the House, Representative Joseph A. Adamo described the proposed change in language as a "technical [change]," one of "three minor substantive changes" to "clean up language that was missed last year, when we did the major reform bill." 35 H.R. Proc., Pt. 4, 1992 Sess., pp.

1296–97, remarks of Representative Joseph A. Adamo. Representative Adamo later explained that the COLA amendment was one of the "technical corrections to last year's bill. Where we did, in fact, change the cost of living increases from a numerical dollar amount to a percentage amount. *That was overlooked in this particular section of the law.*" (Emphasis added.) Id., p. 1297. Those remarks clearly suggest that Representative Adamo considered the "corrections" being proposed in P.A. 92-31 as similar in purpose and effect to the "technical corrections" enacted in P.A. 91-339.

Our conclusion that the formula in *Gil* was intended to apply to surviving spouses as well as to totally disabled workers also is supported by Justice Berdon's observation in *Gil* that the "method of calculating COLAs for persons injured prior to October 1, 1991, will result in totally disabled workers, dependent surviving spouses, and minor children of workers killed in the course of their employment, receiving less in weekly compensation benefits." *Gil* v. *Courthouse One*, supra, 239 Conn. 696 (*Berdon, J.*, concurring in part and dissenting in part). Finally, construing the two provisions in a consistent manner achieves the desirable effect of harmonizing different parts of the statute that have the same objective; *Luce* v. *United Technologies Corp.*, supra, 247 Conn. 137; and avoids the bizarre result of allowing the plaintiff to receive more in survivors' benefits than her husband would have received in total disability benefits had he lived. See *Ancona* v. *Norwalk*, 217 Conn. 50, 55, 584 A.2d 454 (1991) (purpose of dependent death benefits is to replace wages employee can no longer earn).

The plaintiff insists that the *Gil* formula should not be used to calculate survivors' benefits because the two statutory provisions are not identical. She contends that P.A. 91-339 contains a "savings clause" in § 50 that is absent in P.A. 92-31. The "savings clause" provides that

"[n]othing in this act shall be construed to reduce the amount of any compensation awarded for any injury that occurred before October 1, 1991," thus prohibiting a reduction in weekly benefits below the amount received by employees injured before that date. She argues that, absent a similar "savings clause" in P.A. 92-31, the *Gil* formula does not apply to the calculation of survivors' benefits. We disagree.

"The principles of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) *Coppola* v. *Coppola*, 243 Conn. 657, 665, 707 A.2d 281 (1998). Although P.A. 92-31 failed to include a "savings clause," it is clear that the legislature intended to achieve consistency between the two statutory provisions. Not only is the relevant language in each provision identical, but there is no other explanation for Representative Adamo's remarks that the changes proposed in P.A. 92-31 were "technical corrections" similar in nature to those in P.A. 91-339 that simply had been "overlooked." 35 H.R. Proc., supra, p. 1297. Had the legislature not "overlooked" that "technical correction" in 1991, it would have amended § 31-306 (a) (2) (A) in 1991, and § 50 would have applied to both provisions, since the "savings clause" applied to the entire "act" rather than to specified portions of the act. We, accordingly, reject the plaintiff's argument that the absence of a "savings clause" in P.A. 92-31 significantly distinguishes the two amendments and precludes the application of the *Gil* formula to the calculation of COLAs for survivors' benefits during the years in question.

II

The plaintiff claims, in the alternative, that even if the formula in *Gil* was intended to apply to survivors' benefits, the commissioner improperly applied the for-

mula in her case because the formula results in a weekly benefit that is less than that required by the plain language of the relevant statutes. She first argues that computation of the appropriate compensation rate is governed by Public Acts 1979, No. 79-483 (P.A. 79-483),[9] which applies to all injuries occurring from October 1, 1979, to September 30, 1987, and sets the maximum compensation rate at 100 percent of the weekly production wage. That claim has no merit.

Public Act 79-483 is an act concerning product liability, and appears to have established the defendant's liability for the decedent's 1983 injury and the plaintiff's subsequent eligibility to receive benefits. Public Act 79-483 did not require payment of the maximum compensation rate to beneficiaries, as the plaintiff suggests, but merely provided that compensation should not *exceed* 100 percent of a beneficiary's average weekly earnings. Id. Furthermore, calculation of the plaintiff's survivors' benefits is specifically governed by § 31-306 (a) (2) (A) of the compensation act. Accordingly, we conclude that the provisions of P.A. 79-483 have no bearing on the plaintiff's claim that she should receive the maximum compensation rate.

The plaintiff further argues that she is entitled to receive benefits equivalent to the maximum compensation rate under the plain language of § 31-306 (a) (2) (A). She argues, in effect, that the statute requires percentage adjustments to be calculated in accordance with the method adopted in *Wolfe*. Using that method, claimants receiving the maximum base compensation

---

[9] Public Acts 1979, No. 79-483, § 12, concerning product liability actions, provides in relevant part: "Except as provided in section 31-307, the weekly compensation received by an injured employee under the provisions of this chapter shall in no case be more than one hundred per cent, raised to the next even dollar, of the average weekly earnings . . . ." We assume that the plaintiff relies on P.A. 79-483 because the compensability of her husband's injury was based in part on its provisions.

rate received the same weekly benefit under the percentage adjustment method as they did under the flat dollar adjustment method. In *Gil*, however, our Supreme Court noted that the commissioner himself rejected the *Wolfe* approach, presumably because, when applied to all claimants, it resulted in an unacceptable reduction in the benefits of many whose base compensation rate was below the statutory maximum. See *Gil* v. *Courthouse One*, supra, 239 Conn. 681.

The plaintiff also argues that *Gil* is a "remedial" decision and that the formula in *Gil* should only be used in cases where the compensation rate was so low that the plain language of the statute works a hardship on the claimant. We disagree. Neither *Gil* nor the statute distinguishes between beneficiaries who receive the maximum base compensation rate and those who do not. Selective application of *Gil*, therefore, flies in the face of logic, common sense and the plain language of the statute.

The plaintiff finally claims that the legislature's acquiescence in the COLA calculation promulgated by Arcudi, which effectively preserved flat dollar adjustments for beneficiaries receiving the maximum base compensation rate, was not a matter of ignorance but a matter of agreement, and that the legislature's subsequent enactment of P.A. 98-104 is a clear indication that it did not agree with *Gil*. We conclude otherwise. Calculation of COLAs in accordance with the formula set forth in P.A. 98-104 results in benefits that approximate the maximum compensation rate for claimants receiving the maximum base compensation rate, and such a change would not have been necessary had the 1992 amendment intended that such beneficiaries receive the maximum compensation rate.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.