### VICTORIA MARTIN v. PETER MARTIN
### (AC 26735)

Flynn, C. J., and Lavine and Dupont, Js.

146

Argued October 19, 2006—officially released January 9, 2007

*Lori Welch-Rubin,* with whom, on the brief, was *Catherine P. Whelan,* for the appellant (plaintiff).

*Laurel Fedor,* for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, Victoria Martin, appeals from the judgment dissolving her marriage to the defendant, Peter Martin. She also appeals from the trial court's denial of her motion to open the judgment of dissolution due to an alleged substantial change in circumstances after the judgment was rendered. Her claims fall into two basic categories, both of which involve the court's order to sell the marital home. She argues that (1) the orders of the judgment involving the sale of the parties' marital home were an abuse of discretion, given the facts found by, and the evidence presented to, the court, and (2) the deterioration of her son's health occurring after the date of the rendering of judgment constituted a substantial change in circumstances that required the opening of the judgment to eliminate the order of sale. We affirm the judgment of the trial court.

The parties were married in 1989 and have two children, one born on January 7, 1992, and the other on October 11, 1996. The judgment of dissolution was rendered on September 22, 2004, after a contested hearing. Before issuing its orders as part of the judgment dissolving the marriage on the ground of irretrievable breakdown, the court discussed the educational and financial background of the parties, the financing of the marital home, the health of the parties and the assets of the parties. An expert witness for the plaintiff wife estimated the fair market value of the home to be $585,000, and the defendant listed the value as $840,000 on his financial affidavit. The court concluded that its current fair market value was $650,000, that it was encumbered by a mortgage balance of about $367,000 and that it

had an equity of $283,000. The court also noted in its preliminary discussion that preceded its orders that the parties agreed on the record that they would have joint legal custody of their children, primary care with the mother with liberal visitation for the father.

The judgment was signed by the court and included the following. The defendant was to pay $156 weekly for child support and $44 weekly on the remaining arrears[1] and to provide medical insurance for the children; the parties each were to insure their respective lives for $250,000, naming the children as primary beneficiaries until neither party is responsible for child support, which order is modifiable; the defendant was to pay $1 per year as periodic alimony to the plaintiff; and the marital home was to be sold and the net proceeds divided 60 percent to the plaintiff and 40 percent to the defendant. The court specifically ordered that "[t]he plaintiff shall have exclusive possession of the premises until sold and she shall pay the ongoing utilities, heat and the mortgage installments during the said time. She shall also collect the rent[2] and retain same to defray the said expenses. If the parties cannot agree on the asking price, broker, or other terms of sale, either party may move for further orders to carry out this order."[3]

---

[1] The parties agreed that $2283 was the ammount remaining in arrears as of April 16, 2004.

[2] The marital residence has an "in-law apartment" that has been rented for a long time and a basement utilized by the plaintiff for her interior design business. Both uses were, according to a real estate appraiser and the defendant, violative of zoning regulations. No evidence indicated that any zoning authority had sought to enforce any alleged violations.

[3] Ordinarily, an order for a sale of a marital asset is a nonmodifiable assignment, but a court may retain jurisdiction to determine what the best means are to effectuate a sale. See *Roberts* v. *Roberts*, 32 Conn. App. 465, 475, 629 A.2d 1160 (1993). A trial court may retain jurisdiction over the terms and conditions of a listing for sale in the event of a disagreement and can bar either party from purchasing the asset. See *Falkenstein* v. *Falkenstein*, 84 Conn. App. 495, 498, 854 A.2d 749, cert. denied, 271 Conn. 928, 859 A.2d 581 (2004).

The plaintiff summarized her position as to the marital home in her final argument to the court before it had rendered its judgment of dissolution and before she had filed her motion to open the judgment. She sought a quitclaim deed of the defendant's interest in the premises and offered to pay the defendant for his equitable share of the value, calculated by deducting the mortgage, a sum for closing and expenses, and deducting $63,000, payable to her, for the money she supplied toward its purchase, with the remaining balance to be divided 25 percent to the defendant and 75 percent to the plaintiff. The defendant stated that if the house was not going to be sold, no sum should be deducted from its equity for a sales commission and that the plaintiff's contribution to the purchase was "spurious." He also sought 50 percent of the rental income of the apartment in the marital home if the plaintiff were to receive exclusive possession.

On October 1, 2004, the plaintiff filed a motion to open the judgment and filed an amended motion to open on October 25, 2004, both of which alleged "substantial and significant changes in circumstances . . . ." The changes cited by the plaintiff primarily related to the health of the parties' two young children. The plaintiff introduced, at the hearing on her motion to open, testimony from the son's treating physician that changing residences would be detrimental to the son's health. On October 1, 2004, the plaintiff also filed a motion for articulation, requesting the court to state whether she could buy the house and whether she had the right of first refusal. On January 20, 2005, the court, in an oral decision, denied the plaintiff's motion to open and denied the relief requested in the motion for articulation. Although the court denied the plaintiff's motion for articulation, it did state that it was not preventing either party from purchasing the home. The plaintiff filed this appeal on July 11, 2005.

## I

The plaintiff first challenges the correctness of the September 22, 2004 judgment. She primarily claims that it was an abuse of discretion for the court to order that the marital home be sold on the open market. This claim has two parts.

## A

The plaintiff argues that the court did not have the authority, pursuant to General Statutes § 46b-81, to order a sale of the home on the open market, having concluded in its preamble to the judgment that the house had a value of $650,000 on September 22, 2004, the date of the marriage dissolution.[4] The plaintiff does not cite the particular statutory language, if any, that she believes supports her contention. She also cites no case law to support her proposition. The defendant does not directly address the plaintiff's argument in his brief.

Section 46b-81 (a) provides in relevant part: "At the time of entering a decree annulling or dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect." General Statutes § 46b-81 (a).

---

[4] The court heard testimony from a real estate appraiser. Also, the parties valued the property in their financial affidavits. A court may accept or reject such valuations in whole or in part and ascribe its own valuation to real estate. See *Sunbury* v. *Sunbury*, 13 Conn. App. 651, 659–60, 538 A.2d 1082 (1988), rev'd on other grounds, 210 Conn. 170, 553 A.2d 612 (1989). The valuation of real estate is a matter of opinion based on all of the evidence and at best is an approximation to be determined by the fact finder. See *Giulietti* v. *Connecticut Ins. Placement Facility*, 205 Conn. 424, 430–31, 534 A.2d 213 (1987).

The statute explicitly empowers the court to order the sale of the marital property, and the plaintiff does not dispute this. The plaintiff also does not dispute that the court could establish, as part of the judgment, the fair market value of the home and equitably distribute the assets of the parties on the basis of that value. Although not explicitly stated, the plaintiff's argument appears to be that to allow the court first to establish the current fair market value of the marital home as of the day it renders its judgment and then to allow it to order simultaneously the property to be sold on the open market at a potentially different value is an absurdity and, thus, presumptively not allowed by the statute.

Whether the statute authorizes the court to order a sale of real estate on the open market, having first ascribed a current value to it, is a question of law; hence our review is de novo. See *Bornemann* v. *Bornemann*, 245 Conn. 508, 514–15, 752 A.2d 978 (1998). "The principles of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) *Rutledge* v. *State*, 63 Conn. App. 370, 383, 776 A.2d 477 (2001); see *Wyka* v. *Colt's Patent Fire Arms Mfg. Co.*, 129 Conn. 71, 74, 26 A.2d 465 (1942).

When reviewing the plaintiff's contention, we begin by noting that "[t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 740, 785 A.2d 197 (2001).

The court decided that the appropriate distribution of the marital home was to sell the property on the open market and to apportion the proceeds of the sale. We conclude that the court ascribed a value to it on the date of the dissolution judgment in order to assist it in its determination of what the most equitable percentage distribution would be, given the value of all of the assets of the parties. The main focus of the court, in distributing the property, was on the percentage division and not on the monetary number itself. The court listed the current value figure of the home only in the portion of its opinion that discussed the various factors involved in the equitable distribution of the property, rather than in its orders. The percentage figures, in contrast, clearly and prominently appear in the order of the judgment itself, which lists eleven parts and begins with the words "each party is declared to be unmarried, and the following orders are entered as part of said judgment." The judgment signed by the court repeats the exact language regarding the sale as appears in the order portion of the memorandum of decision. Neither contains any finding of a monetary valuation. The monetary value of the marital home is conspicuously absent from both the orders of the court and the judgment of the court. Considering the complexity of finding an equitable balance in the distribution of assets order, the finding by the court of an initial current value of the home was reasonable.

In addition, there are other reasons for establishing the current value of the house. The valuation could prove useful in the future if the parties were unable to sell the house for some reason and therefore returned to court for additional orders, as allowed by the court's order to sell the home. The court's valuation could assist it in a future determination of the best way to effectuate its order, namely, a sale to either party or to another, on the open market. See generally *Roberts* v. *Roberts*,

32 Conn. App. 465, 475, 629 A.2d 1160 (1993). Ascribing a current value to the home, in combination with an order to sell the home is neither absurd nor prohibited by § 46b-81 (a).

B

The plaintiff also claims that it was an abuse of discretion for the court to order the sale of the marital home on the open market when (1) neither party requested a sale of the marital home, (2) the court did not request that they argue the efficacy of sale, thereby depriving the plaintiff of the opportunity to argue against the sale at trial, (3) the plaintiff proffered payment on the basis of the court's September 22, 2004 valuation and (4) sale of the house to a third party would severely damage the son's health. The first two claims are related, and the third and fourth claims may be disposed of summarily.[5]

The plaintiff had an opportunity to argue before judgment was rendered that the home should not be sold and did so. The defendant also had an opportunity to discuss any sale, although he may have assumed that the home would not be sold. The court, therefore, was aware of both parties' wishes as to the disposition of the marital home. Whether the plaintiff or the defendant requested that the house not be sold is not determinative. It is the court that must determine the mode by which the equitable value of the asset to each party is best realized.

We review financial awards in dissolution actions under the familiar abuse of discretion standard. *Falkenstein* v. *Falkenstein*, 84 Conn. App. 495, 502–503,

[5] At the time the plaintiff tried to buy the defendant's interest in the home, the court had already ordered a sale on the open market, which was within the court's equitable power. Given the original order, which required such a sale, the plaintiff had no right to buy the home from the defendant at any particular price. On the basis of the evidence adduced at trial, before the judgment was rendered, the court could have concluded reasonably that the sale of the house would not unduly damage the son's health. Furthermore, the sale might be one in which the plaintiff was the buyer.

854 A.2d 749, cert. denied, 271 Conn. 928, 859 A.2d 581 (2004). "[T]rial courts are empowered to deal broadly with property and its equitable division incident to dissolution proceedings." (Internal quotation marks omitted.) Id., 503. The trial court is granted the authority, pursuant to § 46b-81, to order the sale of the marital home "without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect." General Statutes § 46b-81 (a). The statute also commands the court to consider a number of factors when making its distribution determination. "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity for each for future acquisition of capital assets and income. . . ." General Statutes § 46b-81 (c).

The court reviewed these statutory factors and the relevant case law in its memorandum of decision. We conclude that the court did not abuse its discretion when it concluded that the most equitable means of distributing the asset, the marital home, was to order it sold on the open market.

## II

The plaintiff also claims that the court abused its discretion when it denied her motion to open the judgment because of an alleged substantial change in circumstances that occurred after the judgment was rendered. The plaintiff primarily argues that the evidence supporting her allegation of a substantial deterioration of her son's health, beginning on September 23, 2004, the day after the court's September 22, 2004 judgment, was sufficient to compel the court to open the

judgment.[6] As previously stated, the judgment ordered the home "sold and the net proceeds divided 60 percent to the plaintiff and 40 percent to the [defendant]," and that "[t]he plaintiff shall have exclusive possession of the premises until sold and she shall pay the ongoing utilities, heat and the mortgage installments during said time. . . . If the parties cannot agree on the asking price, broker or other terms of the sale, either party may move for further orders to carry out this order." When it orally denied the plaintiff's motion to open the judgment, the court additionally stated that "if the plaintiff is anxious to buy the house, certainly she can deal with it just like any other potential buyer." At oral argument in support of her motion to open, the plaintiff introduced testimony of the son's treating physician, Demitri Papolos. When asked about the factors leading up to the exacerbation of the son's illness, Papolos noted the divorce itself and a hospitalization of the plaintiff. The plaintiff, in her brief, acknowledges that a cause of the child's deterioration was her own hospitalization and concomitant separation from him.

"Courts have an inherent power to open, correct and modify judgments. . . . A civil judgment of the Superior Court may be opened if a motion to open or set aside is filed within four months of the issuance of judgment." (Citations omitted; internal quotation marks

---

[6] The plaintiff also argues that the court should have considered awarding her a "deferred sale of family residence order," as described by the American Law Institute; see American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations § 3.11 (2000); in light of the increased severity of the son's health condition. That provision, however, is inapplicable here, as it applies only to short-term deferrals. The comments following the provision specifically state that deferral "may be warranted to avoid any significant detriment to a child when the duration of deferral is short. . . ." Id., 510. The plaintiff does not suggest an appropriate short deferral period. Reading her argument as a whole, it appears that she seeks an indefinite deferral, or at least one until the son graduates from the school system in which he is presently enrolled. The child was seven at the time of the decision.

omitted.) *Steve Viglione Sheet Metal Co.* v. *Sakonchick*, 190 Conn. 707, 710, 462 A.2d 1037 (1983); Practice Book § 17-4. Because of the important consideration of finality of judgments, however, a judgment should not be opened without a strong and compelling reason. *Steve Viglione Sheet Metal Co.* v. *Sakonchick*, supra, 711. Further, a motion to open in order to permit a party to present evidence of a substantial change in circumstances after the judgment need not be granted when the evidence offered is not likely to affect the result. Id., 712. The motion should be granted only "when there appears cause for which the court acting reasonably would feel bound in duty so to do." (Internal quotation marks omitted.) Id., 711. "Once the trial court has refused to open a judgment, the action of the court will not be disturbed on appeal unless it has acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) Id.; see *State* v. *New England Health Care Employees Union*, 271 Conn. 127, 144, 855 A.2d 964 (2004); *Cox* v. *Burdick*, 98 Conn. App. 167, 176, 907 A.2d 1282 (2006). "In determining whether the trial court abused its discretion, [the appellate court] must make every reasonable presumption in favor of its action. The manner in which [this] discretion is exercised· should not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *New England Health Care Employees Union*, supra, 144.

The son's condition was known to the court before it rendered its September 22, 2004 decision. There is no evidence that the son was misdiagnosed at the time of the trial or that he had subsequently developed a health condition distinct from his preexisting condition. The court was aware of the son's condition when fashioning its original order. For example, the court specifically addressed the plaintiff's fears that the defendant

would not properly attend to the son's health by ordering the defendant to administer to the child all medications as instructed by the plaintiff. Taking into consideration the plaintiff's desire to keep the child in the marital home, the court granted the plaintiff exclusive possession of the marital home until such time as it was sold, giving the parties the right to return to court in the event of a dispute as to the terms of sale. The evidence that the plaintiff produced in support of her motion to open did not indicate that the underlying condition had changed but only that the son's symptoms had worsened. Even if the plaintiff is correct that the change in her son's health after September 22, 2004, rose to the level of a "substantial change in circumstances," the evidence would not likely have altered the decision of the court. The plaintiff herself acknowledged that a major cause of the son's deterioration was the stress of being separated from her, his mother, while she was in a hospital. Further, the court's order did not prevent the plaintiff from purchasing the marital home on the open market, and she has not argued that she is financially unable to do so. Thus, the court could have concluded reasonably that the proffered evidence would not alter its decision.[7]

## III

The plaintiff's last claim relates to her belief that there will be diminution in her income from her home interior design business if the house is sold and she must pay rent for the conduct of her business. The plaintiff states that we "must find error here and remand this matter for a full hearing on the merits." She argues that if her income is lessened, the modifiable alimony

---

[7] The issue of whether the subsequent deterioration of the child's health was sufficient to support a motion to modify either alimony or child support award is not before this court. Periodic alimony and child support are modifiable after a judgment of dissolution. *Crowley* v. *Crowley*, 46 Conn. App. 87, 91–93, 699 A.2d 1029 (1997).

award of one dollar would need to be increased. The plaintiff's concern relates to a hypothetical situation that may never arise. The court properly made its alimony determination on the basis of the net incomes of the parties at the time of the dissolution. The court's order did not prohibit the parties from later seeking modification of the alimony amount. Should either party's financial situation substantially change in the future, either may seek to have the order of child support or alimony modified. See *Crowley* v. *Crowley*, 46 Conn. App. 87, 91–93, 699 A.2d 1029 (1997).

The judgment is affirmed.

In this opinion the other judges concurred.