******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ERIC P. SOUSA *v.* DONNA M. SOUSA
(SC 19504)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued May 2—officially released August 30, 2016*

*William J. Ward*, for the appellant (plaintiff).

*C. Michael Budlong*, with whom were *Brandon B. Fontaine* and, on the brief, *Emily C. Carr*, for the appellee (defendant).

*Opinion*

ROBINSON, J. In this certified appeal, we consider whether it is so "entirely obvious" that a trial court lacks subject matter jurisdiction to modify a property distribution in a dissolution of marriage judgment that such a modification, rendered in accordance with a stipulation by the parties, is subject to collateral attack under *Vogel* v. *Vogel*, 178 Conn. 358, 362–63, 422 A.2d 271 (1979), and § 12 of the Restatement (Second) of Judgments.[1] The plaintiff, Eric P. Sousa, appeals, upon our grant of his petition for certification,[2] from the judgment of the Appellate Court reversing the judgment of the trial court, *Hon. Lloyd Cutsumpas*, judge trial referee, denying a motion of the defendant, Donna M. Sousa, to vacate a prior judgment, rendered by the court, *Resha, J.*, which "modified, by stipulation, a portion of the judgment of dissolution that ordered that the plaintiff's pension benefits be divided equally between the parties."[3] *Sousa* v. *Sousa*, 157 Conn. App. 587, 590, 116 A.3d 865 (2015). On appeal, the plaintiff claims that the Appellate Court improperly failed to consider aspects of the doctrine of finality of judgments on the basis of its conclusion that it was "entirely obvious" that, under General Statutes § 46b-81 (a) and General Statutes (Supp. 2016) § 46b-86 (a),[4] Judge Resha lacked subject matter jurisdiction to modify the pension division in the prior judgment of dissolution. We conclude that: (1) given a conflict in the case law on point and the Superior Court's plenary jurisdiction over family relations matters, the Appellate Court improperly determined that it was "entirely obvious" that Judge Resha lacked subject matter jurisdiction to modify the property distribution in the judgment of dissolution; and (2) considerations of finality of judgments, as set forth in § 12 of the Restatement (Second) of Judgments, do not support permitting the defendant to mount a collateral attack on the modified judgment. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion aptly sets forth the following relevant facts, as found by the trial court, and procedural history. "After a fourteen year marriage, the parties were divorced in an uncontested proceeding on December 19, 2001. Both parties were represented by counsel. . . .

"A separation agreement was prepared and executed which, among other things, provided that the plaintiff's [B]orough of Naugatuck police pension be divided equally via a Qualified Domestic Relations Order . . . .[5] [That order] was prepared by the defendant's counsel, who received information about the pension from the plaintiff's counsel . . . . A further provision in the agreement called for the plaintiff to pay periodic alimony of $130 per week, subject to termination at the end of five years, or earlier upon the [defendant's]

cohabitation or the death of either party.

"Approximately two years after the divorce, the defendant began cohabit[ing] with Tom Spivak, now her husband. Upon becoming aware of the situation, the plaintiff informed the defendant that she was in violation of their divorce agreement and that he would be seeking to terminate the alimony. After some discussion, the defendant informed the plaintiff that she desired to finish her education leading to a teaching degree, higher income and [her own] pension but would need the alimony payments in order to do so. The defendant proposed to waive her right to her share of the plaintiff's pension in exchange for a continuation of the alimony for three years despite her admitted cohabitation. The plaintiff agreed to the proposal and continued to pay the alimony. . . .

"After the conclusion of the five year alimony period established by the terms of the separation agreement, the plaintiff filed a motion to modify judgment in accordance with [the] stipulation . . . to have the full pension returned to him. By agreement, his counsel prepared the motion and the accompanying stipulation, which was signed by both parties and submitted to the court for approval. Both parties appeared in court before Judge . . . Resha on January 2, 2007, the plaintiff with counsel and the defendant appear[ing] as a self-represented litigant.

"During the hearing, Judge Resha canvassed the defendant, asking if she had reviewed the terms and conditions of the stipulation with a family relations officer, to which she replied in the affirmative. The terms of the stipulation were then read into the record. The judge then asked her why she was entering into this agreement, which waived her right to receive any portion of the plaintiff's pension. To her credit, the defendant truthfully replied that it was her idea, pursuant to an agreement entered into three years earlier that provided that the plaintiff would not cease alimony payments and she would relinquish her portion of his pension.

"Judge Resha further asked the defendant if she understood that once she relinquishe[d] any right to the pension it [would] not be able to be addressed by the court in the future—that [the pension] would be [the plaintiff's] from that point on. She once again answered in the affirmative. The judge then asked if [the defendant] was comfortable entering into the agreement without the benefit of an attorney. Again she answered in the affirmative. The court then made a finding that the stipulation was warranted, accepted it and made it a final order of the court. No appeal was ever taken.

"Four years after the entry of the order, [on] March 31, 2011, the defendant filed her [first] motion to open

and vacate [the] judgment . . . . In that motion, the defendant allege[d] that the modification [in 2007] was secured by fraud on the part of the plaintiff. On November 2, 2011, the defendant filed a [second] motion to vacate the January 2, 2007 order . . . this time claiming that [Judge Resha] lacked jurisdiction to enter such an order. On November 9, 2011, the defendant filed a motion for counsel fees postjudgment . . . . The matter was heard by the [trial court] on January 14, 2014. Both parties were represented by competent counsel . . . .

"On February 25, 2014, the [trial] court issued a memorandum of decision denying all three of the defendant's motions." (Footnote in original; internal quotation marks omitted.) *Sousa* v. *Sousa*, supra, 157 Conn. App. 590–93. With respect to the second motion to vacate, which is at issue in this certified appeal, the trial court "rejected [the defendant's] argument that, in 2007, [Judge Resha] lacked subject matter jurisdiction to modify the order in the judgment of dissolution dividing the plaintiff's pension benefits equally between the parties. The court quoted General Statutes § 52-212a, which provides in relevant part that 'a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed.' Section 52-212a further provides in relevant part that '[t]he parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court . . . .' Guided by that language, the court determined that, although [Judge Resha's] order modifying the judgment of dissolution was entered well over four months after the court rendered the judgment of dissolution, the parties had acquiesced to the court's jurisdiction by submitting a stipulation requesting a modification. Furthermore, the court noted that Judge Resha had canvassed the defendant as to the stipulation, that the defendant had stated her intention to relinquish her claim to the plaintiff's pension benefits, that the defendant had broached the idea of modifying the judgment of dissolution in this way, and that the defendant was comfortable entering into the postdissolution agreement without legal representation. For the foregoing reasons, the court concluded that both parties had waived the four month requirement set forth in § 52-212a and submitted to the jurisdiction of the court. As a result, the court denied the defendant's second motion to vacate."[6] (Footnote omitted.) Id., 593–94.

The defendant appealed from the judgment of the trial court denying her three motions to the Appellate Court. Id., 594. With respect to the defendant's second motion to vacate, the Appellate Court agreed with the defendant's claim that, in 2007, Judge Resha "lacked subject matter jurisdiction to modify the order in the judgment of dissolution dividing the plaintiff's pension benefits equally between the parties." Id., 595. Relying

on its decision in *Stechel* v. *Foster*, 125 Conn. App. 441, 446–47, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011), the Appellate Court stated that a "property distribution order may be modified only if a party files a motion to open requesting a modification within four months of the judgment of dissolution or, if the motion is filed on the basis of fraud, promptly upon the discovery of fraud. . . . Here, [the] pension benefits are considered to be property distributable under § 46b-81 (a) . . . [and] at the time of dissolution, [the defendant was] awarded . . . one half of the plaintiff's pension benefits, [under] the parties' separation agreement, which [was] incorporated into the judgment of dissolution. Neither party filed a motion to open, either within four months of the judgment of dissolution or on the basis of fraud, requesting a modification of the order regarding the plaintiff's pension benefits. Therefore, by subsequently modifying the order dividing the plaintiff's pension benefits equally between the parties, [Judge Resha] acted outside of [his] jurisdictional authority under § 46b-86 (a)." (Citations omitted.) *Sousa* v. *Sousa*, supra, 157 Conn. App. 596.

The Appellate Court further emphasized that the "fact that the parties submitted a stipulation requesting that the court modify the order in the judgment of dissolution regarding the pension benefits has no bearing on the court's lack of jurisdiction to modify that order." Id., 596–97. The Appellate Court explained that § 52-212a, which "permits parties to waive the statutory deadline imposed on the filing of motions to open and to submit to jurisdiction otherwise conferred on a court by statute," did not confer that jurisdiction on Judge Resha. Id., 597. Finally, the Appellate Court rejected the plaintiff's reliance on *Urban Redevelopment Commission* v. *Katsetos*, 86 Conn. App. 236, 860 A.2d 1233 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1289 (2005), for the proposition that "the doctrine of finality of judgments precludes the defendant's claim regarding [Judge Resha's] lack of subject matter jurisdiction," reasoning that "it is *entirely obvious* that § 46b-86 (a) unequivocally deprives a court of subject matter jurisdiction to enter postdissolution orders modifying property distribution provisions in a judgment of dissolution. Therefore, we need not apply the factors set forth in *Urban Redevelopment Commission* to determine whether the doctrine of finality of judgments precludes the defendant's subject matter jurisdiction claim." (Emphasis added.) *Sousa* v. *Sousa*, supra, 157 Conn. App. 559–601. Determining that it was unnecessary to reach the defendant's challenge to the trial court's denial of the first motion to vacate, which was based on fraud; see footnote 6 of this opinion; the Appellate Court reversed the judgment of the trial court in part and remanded the case to that court "with direction to grant the defendant's second motion to vacate; the judgment is vacated as to the denial of the defendant's

first motion to vacate; the judgment is affirmed in all other respects.'"[7] Id., 601. This certified appeal followed. See footnote 2 of this opinion.

On appeal, the plaintiff claims that the Appellate Court improperly failed to consider principles of finality of judgments in allowing the defendant to make a belated collateral attack on Judge Resha's modification to the underlying judgment of dissolution, in light of its conclusion that it was "entirely obvious" that Judge Resha lacked subject matter jurisdiction. He relies on, inter alia, *Monroe* v. *Monroe*, 177 Conn. 173, 413 A.2d 819, cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979), and *Vogel* v. *Vogel*, supra, 178 Conn. 358, and posits that the "principle of finality" has "moderated" the "traditional view" that "subject matter jurisdiction could be traditionally attacked both directly and collaterally." The plaintiff emphasizes that the Superior Court is a court of general jurisdiction that had the institutional competence to consider the challenged stipulation between the parties, which was not so far outside of Judge Resha's jurisdiction to modify periodic alimony payments under § 46b-86 (a) as to create an "entirely obvious" jurisdictional defect. Applying principles of finality of judgments; see, e.g., *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 236; the plaintiff then relies on, inter alia, *Daly* v. *Daly*, 19 Conn. App. 65, 561 A.2d 951 (1989), and *Morris* v. *Irwin*, 4 Conn. App. 431, 494 A.2d 626 (1985), to contend that Judge Resha's modification of the pension distribution portion of the dissolution judgment should receive the benefit of finality, regardless of any jurisdictional defect, because it was four years old when attacked, the defendant was "fully aware" of the consequences of the stipulation underlying the modification, and she had the "opportunity to fully litigate" subject matter jurisdiction in 2007.

Beyond mounting procedural defenses to the plaintiff's claims in this certified appeal, namely that he failed to preserve them before the trial court[8] or adequately brief them in this court,[9] the defendant argues that the Appellate Court properly determined under, for example, *In re Shamika F.*, 256 Conn. 383, 408, 773 A.2d 347 (2001), that it need not conduct a full finality of judgments analysis because it is "entirely obvious" that Judge Resha lacked subject matter jurisdiction to modify the original division of the plaintiff's pension. Citing, inter alia, *Stechel* v. *Foster*, supra, 125 Conn. App. 446–47, and *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980) (per curiam), the defendant emphasizes that the Superior Court's authority to transfer property in a dissolution proceeding is granted by statute, and that under §§ 46b-81 and 46b-86 (a), the court lacks continuing jurisdiction to modify such distributions. She emphasizes that the parties cannot confer such jurisdiction with their consent or waiver, thus rendering Judge Resha's lack of jurisdiction "entirely obvious" under

this court's decision in *Broaca* v. *Broaca*, 181 Conn. 463, 468, 435 A.2d 1016 (1980). Finally, relying on *Broaca*, the defendant argues that, even under the principles regarding the finality of judgments set forth in *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 236, the equities do not preclude an attack on the modified judgment because she was self-represented, she did not actually litigate the issue of jurisdiction before Judge Resha in 2007, and the mosaic theory of property distribution counsels in favor of maintaining the original orders. We agree, however, with the plaintiff, and conclude that: (1) it was not "entirely obvious" that Judge Resha lacked subject matter jurisdiction to modify the judgment of dissolution; and (2) finality considerations preclude a collateral attack on Judge Resha's modification of the judgment.

The issues presented in this certified appeal "[implicate] the issue of subject matter jurisdiction. As a preliminary matter, we note that [i]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . When reviewing an issue of subject matter jurisdiction on appeal, [w]e have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Citation omitted; internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 531–32, 46 A.3d 102 (2012); see also *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 848, 74 A.3d 1192 (2013) (collateral attack on judgment).

I

Although challenges to subject matter jurisdiction may be raised at any time, it is well settled that "[f]inal judgments are . . . presumptively valid . . . and collateral attacks on their validity are disfavored." (Citations omitted.) *Hirtle* v. *Hirtle*, 217 Conn. 394, 401, 586 A.2d 578 (1991). "The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . .

If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings. Unless it is *entirely invalid* and that fact is disclosed by an inspection of the record itself the judgment is invulnerable to indirect assaults upon it." (Emphasis added; internal quotation marks omitted.) *In re Shamika F.*, supra, 256 Conn. 406–407.

First stated in *Vogel* v. *Vogel*, supra, 178 Conn. 362–63, it is now well settled that, "[u]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal *entirely invalid*, he or she must resort to direct proceedings to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. . . . [A]t least where the lack of jurisdiction is *not entirely obvious*, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." (Citation omitted; emphasis added; internal quotation marks omitted.) *In re Shamika F.*, supra, 256 Conn. 407–408.

These principles are consistent with the modern law of civil procedure reflected in § 12 of the Restatement (Second) of Judgments; see footnote 1 of this opinion; which this court first embraced in draft form in *Vogel* v. *Vogel*, supra, 178 Conn. 362–63, and *Monroe* v. *Monroe*, supra, 177 Conn. 178. See footnote 18 of this opinion. Specifically, § 12 of the Restatement (Second) of Judgments reflects the belief of the American Law Institute, shared by this court, that "giv[ing] an expansive interpretation to the concept of subject matter jurisdiction would . . . undermine significantly the doctrine of res judicata, and . . . eliminate the certainty and finality in the law and in litigation which the doctrine is designed to protect. . . . *A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . .* Lesser irregularities do not make a final judgment void." (Citation omitted; emphasis added; internal quotation marks omitted.) *Vogel* v. *Vogel*, supra, 363; see *Hirtle* v. *Hirtle*, supra, 217 Conn. 401; *Meinket* v. *Levinson*, 193 Conn. 110, 114, 474 A.2d 454 (1984); *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 560, 468 A.2d 1230 (1983); 1 Restatement (Second), Judgments § 12, comment (b), pp. 118–19 (1982). Indeed, we recently noted our "continue[d] . . . agree[ment] with the vitality of this rule . . . ." *Investment Associates* v. *Summit Associates, Inc.*, supra, 309 Conn. 855.

Thus, to be "entirely obvious" and sustain a collateral attack on a judgment under the principles contained

within § 12 of the Restatement (Second) of Judgments, a jurisdictional deficiency must amount to a "fundamental mistake" that is "so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." (Internal quotation marks omitted.) *Cameron* v. *Rollo*, 196 Vt. 346, 351, 97 A.3d 454 (2014); cf. id., 350–52 (declining to give collateral estoppel effect to family court's refusal to exercise statutorily conferred exclusive jurisdiction over property distribution in annulment case). Indeed, the United States Supreme Court has observed that such collateral attack should be permitted only in "rare instance[s]," and "only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds, Inc.* v. *Espinosa*, 559 U.S. 260, 271, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010). "[T]he importance of finality in litigation means that the exception to the claim preclusion rule applies in *only the most limited circumstances*." (Emphasis added.) *Lincoln Loan Co.* v. *Portland*, 340 Or. 613, 628, 136 P.3d 1 (2006); accord *Meinket* v. *Levinson*, supra, 193 Conn. 114 (relying on § 12 of Restatement [Second] of Judgments in stating that collateral attack on court's subject matter jurisdiction in "contested case" is "limited"); *Broaca* v. *Broaca*, supra, 181 Conn. 473 (*Peters, J.*, dissenting) ("I would emphasize the *truly exceptional* nature of the 'plainly beyond' cases" [emphasis added]).

Our cases demonstrate that it is extraordinarily rare for a tribunal's jurisdiction to be so plainly lacking that it is "entirely obvious." Most significantly, in *Vogel*, this court rejected a collateral attack on an alimony order in a dissolution judgment, rendered more than twenty years earlier, which a husband later claimed was void because, "at the time judgment was rendered, the law in this state . . . provided that the trial court was without authority to assign any of the husband's property to a woman divorced for her own misconduct. Since the [husband] obtained a divorce on the ground of the [wife's] wilful desertion . . . it is argued that the court had no power to order the weekly payments at issue . . . ." (Citation omitted; footnote omitted.) *Vogel* v. *Vogel*, supra, 178 Conn. 361–62. The court reasoned that, "[a]t the time judgment was rendered," the governing statutes gave the Superior Court "exclusive jurisdiction" over dissolution cases, and authorized property distribution and alimony payments. (Internal quotation marks omitted.) Id., 363. Accordingly, this court determined that the trial court "had competence to entertain the action before it," and rejected the collateral attack on the judgment, which had resulted from a stipulation by the parties. (Internal quotation marks omitted.) Id., 363–64; see also, e.g., *In re Shamika F.*, supra, 256 Conn. 407–408 (rejecting collateral attack on order of temporary custody because "[t]he lack of jurisdiction, if any, was far from obvious" and "[a]llowing a collateral

attack three years into that effort would undermine the purpose of the collateral attack rule as well as the goal of our state agencies in protecting the neglected children of Connecticut" [internal quotation marks omitted]); *Meinket* v. *Levinson*, supra, 193 Conn. 115 (rejecting collateral attack on default judgment, rendered without affidavit of debt or hearing in damages, because court was competent to entertain action and "[s]uch an error in applying the Practice Book rules governing judgments following default is not even arguably jurisdictional"); accord *Torrington* v. *Zoning Commission*, 261 Conn. 759, 769, 806 A.2d 1020 (2002) (zoning commission's lack of jurisdiction to waive regulations and enter into court approved settlement was not "entirely obvious" given that it generally "is empowered to determine whether: [1] the proposed use of the property is permitted under the zoning regulations; [2] the standards contained in the regulations are satisfied; and [3] conditions of approval or modifications to the proposal are necessary to protect public health, safety, convenience and property values").

The defendant, however, relies heavily on *Broaca* v. *Broaca*, supra, 181 Conn. 466, in which this court sustained a collateral attack on a dissolution judgment because "the trial court exceeded its subject matter jurisdiction when it made the original order of support that required the defendant to name irrevocably the parties' children as beneficiaries of the insurance policies insuring his life." Although *Broaca* supports the defendant's position, we view the majority opinion in that case as a wholly unpersuasive outlier. In particular, the majority opinion in *Broaca* does not acknowledge significantly the heightened scrutiny employed in collateral attack cases under, for example, *Vogel* v. *Vogel*, supra, 178 Conn. 361–62, and contains only one conclusory statement, in a footnote, that the trial court's support order "was plainly beyond its jurisdiction . . . ." *Broaca* v. *Broaca*, supra, 468 n.4. Thus, this court's decision in *Broaca* was clearly wrong; see, e.g., *Conway* v. *Wilton*, 238 Conn. 653, 660–61, 680 A.2d 242 (1996); and we overrule it in favor of the analysis employed by Justice Peters in her comprehensive dissenting opinion, which is far more consistent with the principles set forth in § 12 of the Restatement (Second) of Judgments and case law governing collateral attacks on judgments for lack of subject matter jurisdiction.[10] See *Broaca* v. *Broaca*, supra, 473–74 (*Peters*, *J.*, dissenting).

Having established just how extreme a lack of jurisdiction must be to be "entirely obvious," we now turn to the judgment under collateral attack in the present case, namely, Judge Resha's modification of the pension division in the property distribution. The Appellate Court determined that the modification was in excess of the Superior Court's subject matter jurisdiction under §§ 46b-81 and 46b-86 (a), as explained by *Stechel* v. *Foster*, supra, 125 Conn. App. 446–47.[11] Although the

principles cited by the Appellate Court could well have provided the defendant with strong support for a direct appeal from Judge Resha's decision to modify the judgment, they do not by themselves render any lack of subject matter jurisdiction "entirely obvious" for purposes of collateral attack. First, the Superior Court is a general jurisdiction tribunal with "plenary and general subject matter jurisdiction over legal disputes in 'family relations matters' " under General Statutes § 46b-1;[12] *Amodio* v. *Amodio*, 247 Conn. 724, 729, 724 A.2d 1084 (1999); that has power—albeit not unfettered under §§ 46b-81 (a) and 46b-86 (a)—to distribute property in a marital dissolution.

Second, as the Appellate Court has recently recognized, Connecticut's case law is in conflict "regarding whether the modification of a property distribution postdissolution implicates the court's subject matter jurisdiction or merely its statutory authority." *Lawrence* v. *Cords*, 165 Conn. App. 473, 483 n.8, 139 A.3d 778, cert. denied, 322 Conn. 907,     A.3d     (2016).[13] Those cases standing for the proposition that the statutory restriction on postjudgment modification of property distribution is jurisdictional, on which the Appellate Court relied in the present case, "do not address the distinction made by [this court] in *Amodio* v. *Amodio*, [supra, 247 Conn. 728], that 'the court's authority to act pursuant to a statute is different from its subject matter jurisdiction.' "[14] *Lawrence* v. *Cords*, supra, 483 n.8; see W. Horton & K. Bartschi, "2015 Connecticut Appellate Review," 89 Conn. B.J. 172, 190 (2016) (discussing conflict in case law and observing that "[n]either [*Forgione* v. *Forgione*, 162 Conn. App. 1, 6–7, 129 A.3d 766 (2015), cert. denied, 320 Conn. 920, 132 A.3d 1094 (2016), nor *Sousa* v. *Sousa*, [supra, 157 Conn. App. 587] cite *Amodio* v. *Amodio* [supra, 724], which explains the distinction between a court's subject matter jurisdiction and its authority to act" [footnote omitted]). The mere existence of this conflict,[15] along with the Superior Court's general jurisdiction over family matters under § 46b-1, demonstrates that, even if we assume, without deciding,[16] that the restriction of postjudgment modification of property distributions in § 46b-86 (a) is in fact jurisdictional in nature, it is far from "entirely obvious" that Judge Resha was without subject matter jurisdiction in this case when he modified the pension distribution. See *Broaca* v. *Broaca*, supra, 181 Conn. 472 (*Peters*, *J.*, dissenting); *Wells* v. *Wells*, 698 N.W.2d 504, 510 (S.D. 2005). Accordingly, we conclude that the Appellate Court improperly determined that it was "entirely obvious" that Judge Resha lacked subject matter jurisdiction to modify the underlying judgment of dissolution in 2007.

## II

Because it was not entirely obvious that Judge Resha lacked jurisdiction, we next examine the "critical con-

siderations" under *Vogel* v. *Vogel*, supra, 178 Conn. 362–63, namely, "whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so."[17] (Internal quotation marks omitted.) *In re Shamika F.*, supra, 256 Conn. 408; see also *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 243.

A

We first address whether the defendant had the opportunity to litigate the issue of jurisdiction when Judge Resha modified the dissolution judgment in 2007. The defendant contends that "the requirement that the complaining party had the 'opportunity' to litigate is not intended to simply mean that the party *could* have litigated the issue if he or she so chose; rather, the requirement is satisfied only if the party *actually did* litigate the issue." (Emphasis altered.) In support of this contention, the defendant accurately cites a footnote in *Broaca*, which relies on comment (c) to § 15 of the sixth tentative draft of the Restatement (Second) of Judgments[18] in support of the following proposition: "It is clear . . . that even the rule set out in the tentative draft would permit collateral attack of the judgment here because the court's action was plainly beyond its jurisdiction and the subject matter jurisdiction of the court was never litigated in the original action." *Broaca* v. *Broaca*, supra, 181 Conn. 468 n.4. We disagree with this language in *Broaca*, however, to the extent it stands for the proposition that the issue of subject matter jurisdiction must actually be litigated in an original action to receive the benefit of finality, because it represents a misreading of comment (c).[19] Indeed, the analysis in *Broaca* has been undercut by *Meinket* v. *Levinson*, supra, 193 Conn. 114 n.5, in which this court stated: "The defendant filed an appearance in the original action and was on notice of all proceedings in that case. *He had an ample opportunity to assert any defenses but did not avail himself of that opportunity.* His default for failure to plead is, therefore, 'substantially similar to a judgment upon a contested action.' " (Emphasis added.)

Consistent with *Meinket*, we agree instead with the dissent in *Broaca*, which concluded that: "[I]f the original proceedings, in a tribunal of general rather than limited legal capacity, constituted a contested action, relitigation is ordinarily precluded *whether or not the question of the tribunal's jurisdiction was expressly raised in the original action.*" (Emphasis added.) *Broaca* v. *Broaca*, supra, 181 Conn. 472 (*Peters*, *J.*, dissenting), citing Restatement (Second), Judgments § 15, comment (d), p. 157 (Tent. Draft No. 6, 1979); see also *Broaca* v. *Broaca*, supra, 473 (*Peters*, *J.*, dissenting) ("the rule is not limited to cases in which the jurisdictional question was expressly litigated in the original

action"); 1 Restatement (Second), Judgments § 12, illustration (3), p. 122 (1982) ("S sues M under a worker's compensation statute. M defends on the ground that the injury did not occur during the course of S's employment but does not dispute the jurisdiction of the tribunal. Judgment is for S. M may not subsequently attack the judgment on the ground that the tribunal lacked subject matter jurisdiction because S was not an employee of M."). Thus, as with other aspects of the majority opinion in *Broaca*; see part I of this opinion; we overrule *Broaca* v. *Broaca*, supra, 468 n.4.

Moreover, we disagree with the defendant's argument that her status as a self-represented party during the proceedings before Judge Resha deprived her of a fair chance to litigate the jurisdictional issue at that point, given that she "clearly did not have a full understanding of the law and proceedings taking place around her," and had been "pressured by the plaintiff and plaintiff's counsel to sign and enter into the 2007 stipulation for modification when she did not understand its full implications." The defendant does not cite any findings by the trial court of such coercion, or any evidence to support such a claim. To the contrary, the trial court found that, when Judge Resha canvassed the defendant before modifying the judgment, the defendant acknowledged in open court that she had consulted with the family relations office and that it was her idea to modify the judgment of dissolution in exchange for the plaintiff's forbearance on moving to terminate the alimony payments in light of her cohabitation.

Further, the defendant's personal lack of legal knowledge does not equate to a lack of opportunity to litigate jurisdiction that would sustain the extraordinary measure of a collateral attack, despite the fact that she was a self-represented party. Cf. *State* v. *Ryder*, 301 Conn. 810, 819 n.5, 23 A.3d 694 (2011) ("[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants *and when it does not interfere with the rights of other parties* to construe the rules of practice liberally in favor of the pro se party. . . . A party who, unskilled in [legal] matters, seeks to remedy some claimed wrong by invoking processes which are at best technical and complicated, is very ill advised and assumes a most difficult task. Our courts, however, have always been lenient toward such a one, relaxing the rules *wherever it can be done with propriety* . . . ." [Citation omitted; emphasis added; internal quotation marks omitted.]); see also *Darin* v. *Cais*, 161 Conn. App. 475, 480–82, 129 A.3d 716 (2015) (trial court not obligated to advise self-represented defendant how to respond to summary judgment motion). This is particularly so, given that "the judgment here was rendered by a general jurisdiction court fully capable of making an adequate determination on the question of its own jurisdiction. In terms of procedural fairness, [the defendant] had a full opportunity to litigate the question of

subject matter jurisdiction." *Wells* v. *Wells*, supra, 698 N.W.2d 510; see also id., 510–11 (rejecting collateral attack on child support judgment based on claims of interference with tribal sovereignty). Accordingly, we conclude that the defendant had the opportunity to litigate the issue of subject matter jurisdiction before Judge Resha rendered the modification in 2007.

B

Given that the defendant forwent her opportunity to litigate subject matter jurisdiction before Judge Resha, we next look to whether public policy reasons support giving her a second bite at the apple now. Such policy reasons include "whether the litigation is a collateral or direct attack on the judgment, whether the parties consented to the jurisdiction originally, the age of the original judgment, whether the parties had an opportunity originally to contest jurisdiction, the prevention of a miscarriage of justice, whether the subject matter is so far beyond the jurisdiction of the court as to constitute an abuse of authority, and the desirability of the finality of judgments."[20] (Internal quotation marks omitted.) *Morris* v. *Irwin*, supra, 4 Conn. App. 434; see also 1 Restatement (Second), Judgments § 12, comment (d), p. 122 (1982) ("The question therefore is whether the public interest in observance of the particular jurisdictional rule is sufficiently strong to permit a possibly superfluous vindication of the rule by a litigant who is undeserving of the accompanying benefit that will redound to him. The public interest is of that strength only if the tribunal's excess of authority was plain or has seriously disturbed the distribution of governmental powers or has infringed a fundamental constitutional protection.").[21]

We begin by assuming agreement with the defendant's argument that the four year old modification to the judgment is not so entrenched in time as to be invulnerable from collateral attack. See *Martocchio* v. *Savoir*, 153 Conn. App. 492, 504 n.9, 101 A.3d 953 (2014) (five years not "substantial" enough period to foreclose collateral attack based on subject matter jurisdiction, particularly when plaintiff had not consented to jurisdiction and defendant did not argue timeliness). Nevertheless, such collateral attacks are "strongly disfavored . . . because such belated litigation undermines the important principle of finality." *Meinket* v. *Levinson*, supra, 193 Conn. 113; compare *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, supra, 191 Conn. 560 ("[t]he fact that a direct jurisdictional challenge might then have been appropriate is not, however, sufficient to vindicate a subsequent collateral attack upon the consent judgment"), with *Arseniadis* v. *Arseniadis*, 2 Conn. App. 239, 244, 477 A.2d 152 (1984) (noting "[t]he important factor in this case is that the appeal is a direct attack on the judgment made shortly after the judgment was rendered").

We next disagree with the defendant's argument that the mosaic theory of property distribution provides public policy support for her collateral challenge. Specifically, the defendant argues that Judge Resha's modification in 2007 disturbed the property distribution mosaic originally rendered in 2001. See, e.g., *Sunbury* v. *Sunbury*, 210 Conn. 170, 175, 553 A.2d 612 (1989) ("[I]ssues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." [Internal quotation marks omitted.]). In *Daly* v. *Daly*, supra, 19 Conn. App. 70–72, the Appellate Court relied on the mosaic theory to reject a collateral challenge to the nineteen year old *original* judgment of dissolution, only part of which—ordering distribution of the principal of a trust—was claimed to be jurisdictionally defective as beyond the court's authority. Further, *Daly* emphasizes the parties' reliance on the jurisdictionally defective order as a factor counseling *against* allowing a collateral challenge. See id., 71 ("In this case, the original trial court's award of the principal of the trusts was only one part of a financial award that included alimony, child support, medical insurance, beneficiary interests in life insurance policies and attorney's fees. It clearly is not possible or desirable to reallocate all the resources of the parties after twenty years of compliance with and reliance on the original orders of the court.").

Finally, we observe that the parties consented to the exercise of the court's jurisdiction when they presented Judge Resha with a stipulated agreement—as noted previously, the modification originally was the defendant's idea, however ill-advised it might have been in hindsight. Although it is axiomatic that parties cannot confer jurisdiction on a court by consent; see, e.g., *Keller* v. *Beckenstein*, supra, 305 Conn. 531; *Morris* v. *Irwin*, supra, 4 Conn. App. 435; the defendant's assent to the modification undercuts her contention that the modification was a miscarriage of justice deserving of disruption on collateral review.[22] This is particularly so, given that Judge Resha's ratification of the parties' agreement to modify the original judgment of dissolution was not so far afield from the Superior Court's plenary jurisdiction over family matters that we should entertain a collateral challenge sparked by the defendant's change of heart over the bargain that she struck with the plaintiff. See *Hodge* v. *Hodge*, 621 F.2d 590, 592–93 (3d Cir. 1980) (relying on presumption of finality under § 15 of sixth tentative draft of Restatement [Second] of Judgments to reject collateral attack on territorial court of general jurisdiction's statutorily unauthorized award of real estate pursuant to dissolution settlement because parties agreed to judgment and failed to contest jurisdiction at that time); *Vogel* v. *Vogel*, supra, 178 Conn. 363 (rejecting collateral challenge

because, inter alia, husband "not only was fully aware of the consequences of the decrees and had the opportunity to fully litigate the question of jurisdiction in the original action, but, by stipulation, agreed without reservation to the terms of the orders which he now challenges"); *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 244 (rejecting collateral attack on jurisdiction of court accepting sale of defendant's property because "[t]he plaintiff had the opportunity to contest the taking of his property, but instead bargained for an immediate cash payment"); *Morris* v. *Irwin*, supra, 434–35 (rejecting husband's collateral attack on challenge to two and one-half year old judgment because, inter alia, he "by stipulation, agreed without reservation to the terms of the orders which he now challenges" [internal quotation marks omitted]).

Given that Judge Resha's modification to the dissolution judgment was the product of an informed stipulation by the parties, both of whom failed to raise any subject matter jurisdictional challenges at that time, and given that, as described in part I of this opinion, the modification arguably was within the scope of the Superior Court's plenary jurisdiction over family matters, we conclude that there are no strong policy reasons to allow an otherwise disfavored collateral attack on the modified judgment. We therefore conclude that the Appellate Court improperly reversed the trial court's judgment denying the defendant's second motion to vacate, which claimed that Judge Resha lacked subject matter jurisdiction. Because the Appellate Court's conclusion to the contrary caused it to vacate the judgment of the trial court denying the defendant's first motion to vacate without addressing the claims on appeal pertaining to the issue of fraud, a remand to the Appellate Court is required for consideration of those claims on the merits.

The judgment of the Appellate Court reversing the trial court's denial of the defendant's motion to vacate alleging lack of subject matter jurisdiction is reversed, and the case is remanded to the Appellate Court with direction to affirm the judgment of the trial court denying that motion; the judgment of the Appellate Court vacating the trial court's denial of the defendant's motion to vacate alleging fraud is reversed and the case is remanded to the Appellate Court with direction to consider the defendant's remaining claims on appeal.

In this opinion ROGERS, C. J., and PALMER, ZARELLA, EVELEIGH and McDONALD, Js., concurred.

[1] Section 12 of the Restatement (Second) of Judgments provides: "When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:

"(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

"(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

"(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction."

[2] We granted the plaintiff's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that the doctrine of finality of judgments was not applicable and the trial court did not have subject matter jurisdiction?" *Sousa* v. *Sousa*, 317 Conn. 917, 118 A.3d 61 (2015).

[3] For purposes of clarity, all references herein to the trial court are to Judge Cutsumpas, whose decision underlies the Appellate Court decision that is the subject of this certified appeal. When necessary, Judge Resha is referred to by name.

[4] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect."

General Statutes (Supp. 2016) § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines . . . unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . . *This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. . . .*" (Emphasis added.)

We note that, although the legislature has amended both §§ 46b-81 and 46b-86 since the events underlying the present appeal; see, e.g., Public Acts 2013, No. 13-213, §§ 2 and 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, all references to § 46b-81 are to the current revision of the statute and all references to § 46b-86 are to the version appearing in the 2016 supplement to the General Statutes.

[5] "The court incorporated by reference the parties' separation agreement into the judgment of dissolution after concluding that the agreement was fair and equitable." *Sousa* v. *Sousa*, supra, 157 Conn. App. 590 n.1.

[6] The trial court denied the defendant's first motion to vacate, because it concluded that she had failed to prove by clear and convincing evidence that "the plaintiff committed fraud by allegedly failing to fully and accurately disclose the value of his pension plan in his financial affidavit. The court determined that the defendant failed to meet her burden to prove that the value of the plaintiff's pension plan listed in his financial affidavit was inaccurate or that he knew that the value was inaccurate." *Sousa* v. *Sousa*, supra, 157 Conn. App. 593.

[7] "Although the defendant listed on her appeal form the court's denial of her motion for attorney's fees as a judgment from which the appeal was taken, she neither raised nor adequately briefed a claim concerning the court's denial of that motion in her appellate brief." *Sousa* v. *Sousa*, supra, 157 Conn. App. 593 n.2. The Appellate Court, therefore, declined to review any challenge to the trial court's denial of the defendant's motion for attorney's fees. Id. That aspect of the Appellate Court's decision is not at issue in this certified appeal. See footnote 2 of this opinion.

[8] The defendant argues that the plaintiff failed to preserve the finality issue in the trial court, which both prejudiced her and created an inadequate record for review because the finality doctrine is an equitable principle dependent on the trial court's discretion. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 164–66, 84 A.3d 840 (2014) (alternative grounds for affirmance ordinarily must be preserved for review and rest on adequate record). In response, the plaintiff contends in his reply brief that we should not reach the defendant's preservation argument because she: (1) failed to raise it in a cross petition for certification pursuant to Practice Book § 84-4; and (2) raised it in her objec-

tion to his petition for certification to appeal; see Practice Book § 84-6; but we granted the petition anyway, thus implying that we have already decided the preservation issue adversely to her.

We note at the outset that our decision to grant the plaintiff's petition for certification was grounded in our conclusion that this case presents an issue that preliminarily appears deserving of further review. The grant of certification implies neither agreement with all arguments made in the petition, nor outright rejection of all arguments made in opposition, including those having to do with preservation. Cf. *Clarke* v. *Commissioner of Correction*, 249 Conn. 350, 358, 732 A.2d 754 (1999) ("just as a denial by us of certification to appeal from a judgment of the Appellate Court in any given case should not be understood as either approval or disapproval of the opinion of that court . . . a dismissal of a certified appeal on the ground that certification was improvidently granted should not be understood as either approval or disapproval of the decision from which certification to appeal was originally granted" [citation omitted]).

Second, although the defendant's lack of aggrievement precluded the use of a cross petition to seek review of her preservation claims; see *State* v. *Torrence*, 196 Conn. 430, 434 n.6, 493 A.2d 865 (1985); she nevertheless was required to seek permission, pursuant to Practice Book § 84-11 (a), to raise preservation as an alternative ground for affirming the judgment of the Appellate Court, as the record reveals that she did not previously raise this claim in that court. See, e.g., *NPC Offices*, *LLC* v. *Kowaleski*, 320 Conn. 519, 533 n.7, 131 A.3d 1144 (2016). Exercising our discretion to excuse that lapse, we nevertheless disagree with the defendant's preservation arguments. First, our review of the record, namely, the plaintiff's posttrial brief, demonstrates that he did raise considerations of finality, such as res judicata, consent, and reliance, in his posttrial brief and objection to the plaintiff's motion to open—albeit not as artfully as he has on appeal. Second, a review of the defendant's posttrial brief, which contained citations to *Monroe* v. *Monroe*, supra, 177 Conn. 173, and *Vogel* v. *Vogel*, supra, 178 Conn. 358, demonstrates that she should have had at least some awareness that finality could be an issue in this case, and could have presented any relevant factual evidence accordingly in support of her motion to vacate. Thus, the concerns of ambuscade that attend the preservation requirement are not present in this certified appeal, and we reach the merits of the plaintiff's finality claims. See *NPC Offices*, *LLC* v. *Kowaleski*, supra, 530 n.5; see also *State* v. *Santana*, 313 Conn. 461, 467, 97 A.3d 963 (2014) (discussing ambuscade concerns and observing that "this court has expressed a willingness to review claims that a party did not *explicitly* raise to the trial court if it is clear from the record that the substance of the claim was raised" [emphasis added]).

[9] We disagree with the defendant's argument that the plaintiff's brief is inadequate because it fails to present any analysis attacking the "entirely obvious" standard relied upon by the Appellate Court to find a lack of jurisdiction, which obviated the need to consider the finality factors set forth in *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 236. Given the plaintiff's reliance in his brief on the Superior Court's status as a court of general jurisdiction, and his application of authorities relevant to the issue of finality to the facts of this case, we conclude that the plaintiff's brief adequately presents the certified issue for our review and response by the defendant. See, e.g., *Electrical Contractors*, *Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 and n.40, 35 A.3d 188 (2012); but see footnote 16 of this opinion.

[10] In her dissenting opinion in *Broaca*, Justice Peters acknowledged that this court had held that the statutory preclusion of postmajority child support to be jurisdictional in nature; see *Kennedy* v. *Kennedy*, 177 Conn. 47, 51–53, 411 A.2d 25 (1979); she nevertheless stated that she saw "no reason to characterize the trial court's error in its original order as plainly beyond its jurisdiction. The trial court had full authority to adjudicate all claims relating to alimony, to marital property and to support. It had the authority to make other orders, although concededly not this one, about the insurance in question. . . . A court which has authority to make valid orders about a res which is properly before it does not, it seems to me, act plainly beyond its jurisdiction just because it makes an improper order with respect to that res." *Broaca* v. *Broaca*, supra, 181 Conn. 473–74; see also id., 474 (*Peters*, *J.*, dissenting) (concluding that order requiring father to maintain life insurance for benefit of his children was not "miscarriage of justice" subject to collateral attack).

[11] The Appellate Court determined that Judge Resha's lack of jurisdiction was "entirely obvious" by relying on the following principles: "[C]ourts have

no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on . . . § 46b-81. . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . [Section] 46b-86 (a) deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under . . . § 46b-81. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final. . . . Although the court does not have the authority to modify a property assignment, a court . . . does have the authority to issue postjudgment orders effectuating its judgment." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Stechel* v. *Foster*, supra, 125 Conn. App. 446–47, quoting *Bunche* v. *Bunche*, supra, 180 Conn. 289, and *Roos* v. *Roos*, 84 Conn. App. 415, 422, 853 A.2d 642, cert. denied, 271 Conn. 936, 861 A.2d 510 (2004); see also *Sousa* v. *Sousa*, 157 Conn. App. 595–96.

[12] General Statutes § 46b-1 provides in relevant part: "Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving: (1) Dissolution of marriage, contested and uncontested, except dissolution upon conviction of crime as provided in section 46b-47; (2) legal separation; (3) annulment of marriage; (4) alimony, support, custody and change of name incident to dissolution of marriage, legal separation and annulment . . . (15) actions related to prenuptial and separation agreements and to matrimonial and civil union decrees of a foreign jurisdiction . . . and (18) all such other matters within the jurisdiction of the Superior Court concerning children or family relations as may be determined by the judges of said court."

We note that, although the legislature has amended § 46b-1 since the events underlying the present appeal; see, e.g., Public Acts 2013, No. 13-194, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, all references to § 46b-1 are to the current revision of the statute.

[13] In *Lawrence*, the Appellate Court declined to resolve the conflict, but cited the following authorities to demonstrate its existence: "Compare *McLoughlin* v. *McLoughlin*, 157 Conn. App. 568, 575–76 n.5, 118 A.3d 64 (2015) ('we note that the distribution of personal property postdissolution does not implicate the court's subject matter jurisdiction but, rather, its statutory authority'), and *Roos* v. *Roos*, 84 Conn. App. 415, 421–22, 853 A.2d 642 (noting that distribution of personal property postdissolution is question of statutory authority, not subject matter jurisdiction), cert. denied, 211 Conn. 936, 861 A.2d 510 (2004), with *Forgione* v. *Forgione*, 162 Conn. App. 1, 6–7, 129 A.3d 766 (2015) (stating that court lacked subject matter jurisdiction to modify property distribution postdissolution), and *Sousa* v. *Sousa*, [supra, 157 Conn. App. 596] ('by subsequently [postdissolution] modifying the order dividing the plaintiff's pension benefits equally between the parties, the court acted outside of its jurisdictional authority') . . . . See also *Bunche* v. *Bunche*, [supra, 180 Conn. 289] ('[b]y its terms, the statute deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under . . . § 46b-81'); *Smith* v. *Smith*, 249 Conn. 265, 273, 752 A.2d 1023 (1999) ('[T]he statutory scheme regarding financial orders appurtenant to dissolution proceedings prohibits the retention of jurisdiction over orders regarding lump sum alimony or the division of the marital estate . . . [and] confers authority on the trial courts to retain continuing jurisdiction over orders of periodic alimony, but not over lump sum alimony or property distributions pursuant to § 46b-81.' . . .)." *Lawrence* v. *Cords*, supra, 165 Conn. App. 483 n.8; accord *Weyher* v. *Weyher*, 164 Conn. App. 734, 745, A.3d (2016) (rejecting collateral attack because "[e]ven though the defendant is correct that the court lacked the authority to order binding arbitration in the dissolution judgment, absent an executed agreement by the parties, it does not follow that the court lacked subject matter jurisdiction when it rendered that judgment").

[14] By way of background, we note that this court's decision in *Amodio* v. *Amodio*, supra, 247 Conn. 724, was—consistent with Justice Peters' dissenting opinion in *Broaca* v. *Broaca*, supra, 181 Conn. 471—a marked departure from cases such as *Bunche* v. *Bunche*, supra, 180 Conn. 289, which describe statutory restrictions on the Superior Court's authority in dissolution actions as jurisdictional in nature. In *Amodio*, this court considered "the distinction between a trial court's 'jurisdiction' and its 'authority to act' under a particular statute." *Amodio* v. *Amodio*, supra, 727. In *Amodio*, this court cited § 11 of the Restatement (Second) of Judgments and *Monroe* v.

*Monroe*, supra, 177 Conn. 185, for the following proposition: "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, supra, 727–28. The court emphasized in *Amodio* that, "[a]lthough related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) Id., 728; see also *In re Jose B.*, 303 Conn. 569, 579–80, 34 A.3d 975 (2012) ("the purported distinction between a tribunal's action [that] exceeds its statutory authority, which we have treated as implicating the tribunal's jurisdiction, and a tribunal's action [that] misconstrues its statutory authority, which we have treated as involving the proper construction of the statute . . . has proven illusory in practice" [citation omitted; internal quotation marks omitted]).

Relying on these principles, and citing Justice Peters' dissent in *Broaca*, the court concluded in *Amodio* that: "[§] 46b-1 (4) provides the Superior Court with plenary and general subject matter jurisdiction over legal disputes in 'family relations matters,' including alimony and support. . . . [Section] 46b-86 (a) provides the trial court with continuing jurisdiction to modify support orders. Together, therefore, these two statutes provided the trial court with subject matter jurisdiction over the modification claim in the present case." (Footnotes omitted.) *Amodio* v. *Amodio*, supra, 247 Conn. 729–30. Thus, the court held that, although § 46b-86 (a) authorizes modification of support orders in the absence of language in the court's decree precluding modification, the presence of such preclusive language did not operate to deprive the court of subject matter jurisdiction. Id., 730–31.

[15] The dissenting justice apparently disagrees with our consideration of this conflict in the § 46b-86 (a) case law in determining whether it is "entirely obvious" that Judge Resha lacked subject matter jurisdiction to modify the property distribution. We acknowledge that the plaintiff's brief does not highlight, with any degree of detail, this conflict in the case law or otherwise challenge the potential infirmity of the Appellate Court's underlying statutory analysis. We, however, eschew the fundamentalist adherence to the adversarial process urged by the dissenting justice in favor of this court's customary independent check of the validity of the sources cited by the parties in their briefs and the Appellate Court in its opinion—an inquiry that we are obligated to undertake to ensure that the court's opinions are consistent with current case law and statutes. The conflict in the § 46b-86 (a) case law was readily discernible from that independent inquiry. Accordingly, we do not view our consideration of this conflict as introducing a new legal issue into the present appeal, and we respectfully disagree with the dissent's call for supplemental briefing on this point. Cf. *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162–64, 84 A.3d 840 (2014).

[16] This issue may well receive some clarification in the near future. On May 4, 2016, this court granted a petition for certification to appeal from the Appellate Court's decision in *Reinke* v. *Sing*, 162 Conn. App. 674, 133 A.3d 501 (2016) (per curiam), limited to the following issue: "Did the Appellate Court correctly determine that, in the absence of a finding of fraud, the trial court lacked subject matter jurisdiction to open the parties' judgment of dissolution of their marriage?" *Reinke* v. *Sing*, 321 Conn. 911, 912, 136 A.3d 644 (2016); see also *Reinke* v. *Sing*, supra, 162 Conn. App. 677–78 (reversing trial court's grant of motion to open three year old judgment of dissolution and modify property distribution and alimony awards).

[17] Query whether this two step process for the collateral attack on a judgment, under which we entertain the "critical considerations" of *Vogel* v. *Vogel*, supra, 178 Conn. 362–63, only *after* determining that it was not "entirely obvious" that the court that rendered the original judgment lacked subject matter jurisdiction, is consistent with § 12 of the Restatement (Second) of Judgments. Specifically, § 12 of the Restatement (Second) of Judgments appears to be more restrictive insofar as it permits collateral attacks on judgments only in three narrowly delineated circumstances, one of which is akin to the "entirely obvious" lack of jurisdiction. See footnote 1 of this opinion. We need not, however, consider this potential issue, because the

parties have not raised it and the plaintiff prevails under the two step process in any event.

[18] We note that § 15 of the sixth tentative draft of the Restatement (Second) of Judgments was subsequently adopted by the American Law Institute and is presently set forth in § 12 of the Restatement (Second) of Judgments.

[19] It appears that the *Broaca* majority's reliance on comment (c) was misplaced, as that comment merely stands for the inapposite proposition that a tribunal's determination on subject matter jurisdiction, when expressly raised and decided in one action, is entitled to preclusive effect in subsequent attacks on that judgment. See Restatement (Second), Judgments § 15, comment (c), p. 154 (Tent. Draft No. 6, 1979); see also footnote 18 of this opinion. That comment simply does not address the situation such as that present in this case, wherein the issue of subject matter jurisdiction was not raised or decided previously.

[20] We note that the defendant, consistent with her preservation arguments; see footnote 8 of this opinion; suggests that the weighing of these factors, to the extent they are equitable in nature, is a discretionary determination for the trial court in the first instance. She quotes this court's decision in *Kim* v. *Magnotta*, 249 Conn. 94, 109, 733 A.2d 809 (1999), for the proposition that, "in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity," and states that "[t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Allen* v. *Nissley*, 184 Conn. 539, 546, 440 A.2d 231 (1981). She then cites *Martin* v. *Martin*, 99 Conn. App. 145, 156, 913 A.2d 451 (2007), for the proposition that the "trial court's application of the finality principle is reviewed for abuse of discretion . . . ." We disagree. First, *Martin* is distinguishable because it involves review of a trial court's denial of a timely motion to open. See id., 149, 155–56. Instead, those few previous cases that have stated a standard of review in considering collateral attacks on judgments for lack of jurisdiction, including with respect to the finality considerations, have done so under a plenary standard of review. See *Investment Associates* v. *Summit Associates, Inc.*, supra, 309 Conn. 848; *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 240. These cases are consistent with a policy based inquiry for permitting such collateral attacks, insofar as public policy determination is a question of law for the court. See, e.g., *Burr Road Operating Co. II, LLC* v. *New England Health Care Employees Union, District 1199*, 316 Conn. 618, 639, 114 A.3d 144 (2015) (arbitration award); *Brown* v. *Soh*, 280 Conn. 494, 501, 909 A.2d 43 (2006) (whether contract is void against public policy); *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 588, 693 A.2d 293 (1997) (wrongful discharge in violation of public policy).

[21] For example, courts have sustained collateral attacks on state court dissolution judgments that present supremacy clause problems by exceeding authority, deemed subject matter jurisdictional in nature, granted by federal statutes. See *Cline* v. *Cline*, 90 P.3d 147, 153–54 (Alaska 2004) (sustaining collateral attack on state court order that distributed more than 50 percent of military retirement benefits, in excess of federal statute that "established a limited grant of subject matter jurisdiction to state courts"); *In re Marriage of Hulstrom*, 342 Ill. App. 3d 262, 271–72, 794 N.E.2d 980 (2003) (property division subject to collateral attack under § 12 of Restatement [Second] of Judgments because, given federal preemption principles, it divided Social Security benefits in violation of federal law, and thus "substantially infringe[d] the authority of another tribunal or agency of government, in this case, the federal government" [internal quotation marks omitted]); but see *Evans* v. *Evans*, 75 Md. App. 364, 374–75, 541 A.2d 648 (1988) (rejecting collateral attack on dissolution judgment because classification of military disability pension as marital property, in contradiction of federal law, was legal error rather than beyond state court's jurisdiction to divide marital property).

[22] The defendant also makes several fairness based arguments, each of which lacks merit in this purely jurisdictional context. First, we disagree with her reliance on the policy of fairness and equity in marital dissolution cases, as embodied by General Statutes § 46b-66 (a), under which "[i]n dissolution actions, the trial court is authorized to accept an agreement crafted by the parties and incorporate it into its order or decree if the court finds, after inquiry of the parties, that the agreement is fair and equitable." *Dougan* v. *Dougan*, 301 Conn. 361, 368, 21 A.3d 791 (2011). She contends that Judge Resha failed to adhere to this statutory requirement prior to modifying the judgment, and was misled by an inaccurate financial disclosure

by the plaintiff. Insofar as the jurisdictional deficiency must be apparent from the face of the record for purposes of a collateral challenge, and we indulge every presumption in favor of subject matter jurisdiction; see, e.g., *Investment Associates* v. *Summit Associates, Inc.*, supra, 309 Conn. 858; *In re Shamika F.*, supra, 256 Conn. 406–407; even assuming that § 46b-66 (a) is jurisdictional in nature, we read Judge Resha's canvass of the defendant to comport with that provision. See *Hirtle* v. *Hirtle*, supra, 217 Conn. 403 ("On this meager record, the defendant has failed to overcome the presumption that [the trial court] was reading from a written document when he described the terms of the modified support order to which the parties had agreed. The modified judgment of postmajority support has therefore not been shown to be jurisdictionally defective."); *Monroe* v. *Monroe*, supra, 177 Conn. 184–85 (The court rejected a collateral challenge to the jurisdiction of a judge trial referee because "[t]he absence from the case file of a signed order is by no means conclusive evidence on the face of the record that the Superior Court judge never heard or acted upon the motion to refer the case. The record in its totality indicates either that the Superior Court judge overlooked signing his order of reference or that his signed order has been inadvertently misplaced. Such oversights are not jurisdictional defects for the purpose of collateral attack on a judgment." [Emphasis omitted.]).

We also disagree with the defendant's reliance on the policy of " 'full and frank disclosure' " in dissolution cases; see, e.g., *Reville* v. *Reville*, 312 Conn. 428, 441–42, 93 A.3d 1076 (2014); which she contends that the plaintiff breached in 2001 and 2007 by disclosing only the value of his contributions to the plan fund, rather than the actuarial value of his pension based on the $43,992.80 benefit that he has received since retiring. In our view, this simply is a restatement of her fraud claim, which the trial court rejected in denying her first motion to vacate. See footnote 6 of this opinion.